IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION


REBECCA L. TUSHNER,                                          1:11-cv-00600-CL

        Plaintiff,

   v.

MICHAEL J. ASTRUE, Commissioner of Social
Security,

        Defendant.                                  OPINION & ORDER

_____

CLARKE, Magistrate Judge:

    Rebecca Tushner ("plaintiff") brings this action pursuant to the Social Security Act (the

"Act"), 42 U.S.C. §§ 405(g), 1383(c), to obtain judicial review of a final decision of the

Commissioner.  The Commissioner denied plaintiff's application for Title XVI supplemental

security income ("SSI") disability benefits under the Act.  For the reasons set forth below, the

Commissioner's decision should be AFFIRMED.

## PROCEDURAL BACKGROUND

    On September 4, 2007, plaintiff protectively filed an application for SSI.  Tr. 135-138.

After the application was denied initially and upon reconsideration, plaintiff timely requested a

hearing before an administrative law judge ("ALJ"). Tr. 87-96, 102-104. On February 17, 2010, an ALJ hearing was held before the Honorable Steve Lynch. Tr. 49-84. On April 16, 2010, ALJ Lynch issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 12-24. After the Appeals Council declined to review the ALJ decision on March 18, 2011, plaintiff filed a complaint in this Court. Tr. 1-4.

## FACTUAL BACKGROUND

Born on November 30, 1950, plaintiff was 57 years old on the date of her initial protective filing and 59 years old at the time of the hearing. Tr. 17, 57. Plaintiff is a high school graduate who has not been employed since 1998. Tr. 54, 57. Plaintiff has previous work experience in electronics assembly, general warehouse work, flower prep at a floral shop, and product demonstration at Costco. Tr. 65, 177. She alleges disability beginning January 1, 2007, due to hearing loss, mental health issues, depression, vision problems, irritable bowel syndrome, and "poor health overall." Tr. 135.

Pamela Groves, a long-time friend of plaintiff's, testified at the hearing. Tr. 70-74. Ms. Groves stated that plaintiff "can't focus, and she'll jump from one topic to another. . . she's never relaxed, never happy, always agitated, always nervous." Tr. 71-72. A vocational expert ("VE") also testified at the hearing. Tr. 74-83. The VE opined that a hypothetical claimant capable of the full range of medium and light work, with the limitations set forth in plaintiff's residual functional capacity ("RFC") assessment, could perform a small products assembly job. Tr. 79. Although the VE maintained that a claimant with depression and limited interest in public interaction would still be able to perform a small products assembly job as described, she also acknowledged that such employment would likely be precluded for a claimant who

Page 2 - OPINION & ORDER

struggled with concentration and was easily distracted such that her productivity ranged less than seventy-five percent of the average worker. Tr. 78, 80. When asked if missing two days of work would preclude sustained employment, the VE responded in the affirmative. *Id.*

### STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial

Page 3 - FINDINGS AND RECOMMENDATION

gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; *see* 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; *see* 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." *Yuckert*, 482 U.S. at 141; *see* 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 141. At step five, the Commissioner must establish that the claimant can perform other work. *Id.* at 142; *see* 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden and proves that the claimant is able to perform other work which exists in the national economy, he is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## DISCUSSION

I. The ALJ's Findings

At step one of the sequential evaluation process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity since August 20, 2007, the date of

Page 4 - OPINION & ORDER

plaintiff's initial filing. Tr. 17, Finding 1. This finding is not in dispute. Plaintiff's Opening Brief ("Pl.'s Op. Br.") 24 ("In the instant case, steps 1 through 3 are not at issue."). At step two, the ALJ found that plaintiff had severe impairments in the form of obesity, left ear hearing loss, and depressive/bipolar disorder; non-severe impairments in the form of headaches, hypertension, and gastroesophageal reflux disease; and that her testimony regarding back pain was "entirely without medical signs, clinical findings or diagnosis in the record." Tr. 17, Finding 2. This finding is not in dispute. Pl.'s Op. Br. 24. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or equals the requirements of a listed impairment. Tr. 20, Finding 3. This finding is not in dispute. Pl.'s Op. Br. 24.

Because plaintiff did not establish disability at step three, the ALJ continued the evaluation process to determine how plaintiff's medical impairments affected her ability to work. The ALJ found that plaintiff had the RFC to perform light exertional work. Tr. 21, Finding 4. However, plaintiff was to avoid hazardous work sites and proximity to factory floor noise, and was restricted to work that involved simple, routine tasks involving less than occasional interaction with the public. *Id.* Plaintiff disputes her RFC assessment. Pl.'s Op. Br. 24.

At step four, the ALJ found that plaintiff was capable of performing past relevant work, specifically small products assembly. Tr. 24, Finding 5. Plaintiff disputes this finding. Pl.'s Op. Br. 24. Because the ALJ found that plaintiff can still perform past relevant work at step four, the ALJ determined that plaintiff was not disabled within the meaning of the Act. Tr. 24, Finding 6.

However, plaintiff also disputes the ALJ's findings at step five. Pl.'s Op. Br. 24 ("Plaintiff disputes . . . his findings at step five of the sequential analysis, that Plaintiff retains the residual functional capacity to perform work which exists in significant numbers in the

Page 5 - FINDINGS AND RECOMMENDATION

national economy."). However, the ALJ properly did not make findings at step 5 because he found plaintiff capable of performing past relevant work at step four. Tr. 21-24. When an ALJ makes such a finding at step four, the claimant is found disabled and the sequential analysis ends; the burden shifts and step five analysis commences only when plaintiff *cannot* perform past relevant work. *See Yuckert*, 482 U.S. at 141. Indeed, the ALJ made no such finding regarding plaintiff's capacity "to perform work which exists in significant numbers in the national economy," as plaintiff argues.[1] Pl.'s Op. Br. 24. Therefore, the Court declines to consider plaintiff's argument regarding step five.

II. Plaintiff's Allegations of Error

Plaintiff argues that the ALJ erred by: 1) failing to consider plaintiff's Global Assessment of Functioning score, Pl.'s Op. Br. 24-25; 2) improperly rejecting the opinions of treating and examining doctors, Pl.'s Op. Br. 25-27; 3) improperly rejecting plaintiff's testimony, Pl.'s Op. Br. 27-29; 4) improperly rejecting the testimony of plaintiff's lay witness, Patricia Groves, Pl.'s Op. Br. 29-31; and 5) failing to fully and fairly develop the record by declining to ask more specific questions of plaintiff's lay witness and refraining from scheduling a neuropsychological consultative examination for plaintiff, Pl.'s Op. Br. 31-33. Plaintiff did not file a reply brief. The Court will respond to each of plaintiff's allegations of error in turn.

A. Plaintiff's Global Assessment of Functioning ("GAF") Score

Plaintiff alleges the ALJ erred by failing to consider plaintiff's GAF score. Pl.'s Op.

---

[1]Defendant also refers to the ALJ's findings that "Plaintiff retained the ability to perform her past relevant work of small products assembly, as it is generally performed in the national economy." Def.'s Br. 4-5. However, as noted above, the ALJ in his decision never refers to work performed in the national economy nor makes specific findings at step five.

Br. 24-25. "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n. 2 (9th Cir.1998). A GAF score of 50 indicates "serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning." *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. Text Revision 2000) 34. Plaintiff's psychologist, Dr. Aadland, assigned plaintiff GAF scores of 50 and 45-50 in her session notes. Tr. 643-45. The ALJ did not discuss plaintiff's GAF score in his decision.

Plaintiff cites cases from California and Pennsylvania, arguing that "[c]ase law precedent interpreting the significance of GAF scores indicates that a GAF score of 50 is generally considered supportive of a finding of disability." Pl.'s Op. Br. 24-25. However, under Ninth Circuit law, an ALJ's failure to address specific GAF scores does not necessarily constitute legal error. *McFarland v. Astrue*, 288 Fed. Appx. 357, 359 (9th Cir. 2008) (ALJ's failure to address GAF scores specifically did not constitute legal error); *see also Purvis v. Comm'r of Soc. Sec. Admin.*, 57 F.Supp.2d 1088, 1093 (D.Or. 1999) (noting absence of Ninth Circuit authority presented to suggest that GAF score of 50, by itself, required finding of disability). GAF scores, standing alone, are not determinative of the severity of mental impairments for purposes of social security disability claims. *See* 65 Fed.Reg. 50746, 50764–65 (August 21, 2000) ("[The GAF scale] does not have a direct correlation to the severity requirements in our mental disorder listings.").

Here, the ALJ discussed plaintiff's medical records at length, including Dr. Aadland's session notes, which contain plaintiff's GAF score assessment. Tr. 17-20. The ALJ made note

of each of plaintiff's visits to Dr. Aadland and observed that Dr. Aadland made her diagnosis of

Bipolar I Disorder based on the "symptoms reported by Ms. Tushner." Tr. 20. Plaintiff's GAF

score appears as a number above a series of check boxes in Dr. Aadland's session notes, without

any accompanying explanation regarding what information, beyond symptoms self-reported by

plaintiff, informed the GAF score determination, nor any functional limitations that the GAF

score might indicate. Tr. 643-45. Indeed, the check boxes below plaintiff's GAF score appear to

show that the GAF score was linked to plaintiff's reports of suicidal ideation and thoughts of

self-harm, rather than any assessment of functional limitations or impairments in social,

occupational, or school functioning. *Id.* Moreover, the ALJ found plaintiff's subjective

complaints, the sole information upon which the GAF scores appear to be based, to be not

entirely credible (see discussion below). Tr. 23. Finally, the ALJ's ultimate RFC determination

was supported by substantial evidence in the record and took into account plaintiff's mental

impairments. Thus, the ALJ's failure to consider plaintiff's GAF score does not constitute legal

error.

    B. Opinions of Plaintiff's Treating and Examining Doctors

    Plaintiff alleges the ALJ erred by improperly rejecting the opinions of treating and

examining doctors. Pl.'s Op. Br. 25-27. To reject the uncontroverted opinion of a treating or

examining physician, the ALJ must present clear and convincing reasons. *Bayliss v. Barnhart*,

427 F.3d 1211, 1216 (9th Cir. 2005). If a treating or examining doctor's opinion is contradicted

by another doctor's opinion, it may be rejected by specific and legitimate reasons. *Id*. When

evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not supported

by clinical findings, or is brief or conclusory. *Id.* In addition, a doctor's work restrictions based

Page 8 - OPINION & ORDER

on a claimant's subjective statements about symptoms are reasonably discounted when the ALJ finds the claimant less than credible. *See, e.g., Bray v. Comm'r of Soc. Sec. Admin.*, 544 F.3d 1219, 1228 (9th Cir. 2009); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ provided clear and convincing reason to reject a doctor's opinion where it was in the form of a checklist, lacked supporting objective evidence, was contradicted by other statements in the record, and was based on subjective descriptions).

    1. Dr. Aadland

Plaintiff argues the ALJ improperly rejected the findings of plaintiff's psychologist, Dr. Amy Aadland, PsyD. Pl.'s Op. Br. 26. From October 2009 to February 2010, plaintiff attended four individual therapy sessions with Dr. Aadland. Beyond various physicians' observations of plaintiff's complaints regarding her depression and anxiety, Dr. Aadland's is the only medical opinion fully addressing plaintiff's mental impairment of depressive/bipolar disorder. As such, Dr. Aadland's opinion is uncontroverted; thus, the ALJ needed to provide clear and convincing reasons for rejecting it.

At their first meeting, Dr. Aadland diagnosed plaintiff with Bipolar I Disorder. Tr. 625. Dr. Aadland noted that plaintiff "presented with elevated affect despite subjective feelings of depression. She displayed pressured, rapid speech and was highly distractible." *Id.* However, Dr. Aadland also emphasized that plaintiff "stated she had not taken prescribed Fluoxetine (20 mg) [an anti-depressant medication] for 5 days prior to intake. This may impact her clinical presentation." *Id.* Dr. Aadland's summary and diagnosis were based on a "Client interview and the 5 page information packet completed by Client." *Id.*

In subsequent visits, Dr. Aadland noted that plaintiff continued to display symptoms of bipolar disorder, although "it was unclear at the time of session if these symptoms were a Mixed Episode or a result of Client's sporadic medication use." Tr. 630. Following Dr. Aadland's initial diagnosis, her session notes contain a subjective client report, objective therapist observations, a series of check boxes for interventions and assessments, and a number indicating plaintiff's GAF score, which Dr. Aadland indicated to be 50 and 45-50. Tr. 643-45. In a letter to plaintiff's counsel dated February 20, 2010, Dr. Aadland explained that the "symptoms reported by Ms. Tushner have allowed her to meet criteria for the following diagoses: Bipolar I Disorder, Most Recent Episode Mixed . . . According to Ms. Tushner, she has experienced symptoms related to this diagnosis for the last four years." Tr. 632. Dr. Aadland, however, specifically declined to give an opinion regarding how plaintiff's symptoms impacted her activities of daily living, social functioning, or her ability to maintain concentration, persistence, or pace, as she regarded such an assessment to be "outside the scope" of her practice and treatment. *Id.*

The ALJ gave Dr. Aadland's opinion little weight. Tr. 23. The ALJ credited the doctor's opinion that plaintiff suffered from bipolar disorder, however he noted that plaintiff's diagnosis was made solely "based on 'the symptoms reported by Ms. Tushner.'" *Id.* The ALJ found Dr. Aadland's exclusive reliance on the claimant's subjective claims problematic as "the claimant is consistently not entirely credible throughout the record." *Id.* In addition, the ALJ noted Dr. Aadland's disinclination to render a mental functional assessment of the claimant's capacity to do basic work activities. *Id.*

An ALJ is not required to accept a medical opinion that is not supported by clinical findings or is based on an uncredible claimant's subjective reports. *See Bayliss*, 427 F.3d at 1216; *Batson*, 359 F.3d at 1195; *Bray*, 554 F.3d at 1228. As discussed in greater length below, substantial evidence in the record supports the ALJ's finding that plaintiff is not entirely credible. In addition, Dr. Aadland emphasized at multiple points in her notes and summary letter that her diagnosis, summary of symptoms and presenting problems, and mental status assessment are based entirely on plaintiff's subjective self-reporting. Tr. 23.

As discussed above, Dr. Aadland assigned plaintiff a GAF score of 50 and 45-50; however, the doctor did not specify how she made her assessment nor what specific information informed her decision. Further, Dr. Aadland specifically declined to give her opinion regarding plaintiff's RFC. Tr. 632. Finally, Dr. Aadland's opinion, even if accepted as true, does not support findings of substantially greater functional limitations than those already addressed in the RFC, as despite the limitations of Dr. Aadland's opinion, the ALJ found plaintiff's bipolar disorder to be a severe impairment and assessed her RFC accordingly. Thus, the ALJ set forth clear and convincing reasons for giving Dr. Aadland's opinion little weight.

2. Medical Opinion Regarding Hearing Loss in Right Ear

Plaintiff argues the ALJ improperly rejected the opinions of plaintiff's various treating physicians by concluding that plaintiff suffered hearing loss in the left ear only. Pl.'s Op. Br. 26. In his decision, the ALJ identified what he believed to be inconsistencies between plaintiff's reported symptoms of hearing loss and her actual diagnosis and limitations:

> In describing her symptoms, the claimant stated to Dr. Ellison that her hearing has been poor since she was in third grade and that she has used hearing aids (plural), inferring use in the ears bilaterally. However, the records only reflect

Page 11 - FINDINGS AND RECOMMENDATION

> a hearing aid prescribed for left ear only . . . The claimant had only a left hearing
> aid upon examination despite alleging bilateral hearing loss . . . In listing diagnoses,
> Dr. Ellison noted "moderate bilateral hearing loss," based entirely on the claimant's
> report. However, the record only reflects hearing loss in the left ear with over 25-
> years successful use of a hearing aid in that ear.

Tr. 18-19. Plaintiff maintains that the record includes evidence of hearing loss in both ears,

indeed worse perhaps in the right compared to the left ear, as well as evidence that plaintiff wore

bilateral hearing aids dating as far back as December 2001. Pl.'s Op. Br. 26.

The statements of plaintiff's various treating physicians are inconsistent regarding

plaintiff's use of hearing aids: some physicians note use of only left ear hearing aids, *e.g.* Tr.

386, 461, 481, while other physicians note use of hearing aids (plural), *e.g.* Tr. 283, 334. A letter

from Dr. Andrew Pederson, M.D., who conducted an audiologic examination of plaintiff in

August 2009, appears to resolve these inconsistencies by stating: "My understanding on talking

with her is that she initially had two hearing aids but subsequently ended up only with one,

which she currently wears in her left ear. She said she cannot afford other ones." Tr. 587-88.

Dr. Pederson's examination revealed "bilateral sensorineural loss, significant" and he

recommended that plaintiff "be fitted with binaural hearing aids. This would help her

tremendously." *Id.* Thus, plaintiff is correct in asserting that plaintiff's medical records contain

evidence of bilateral hearing loss and periodic use of bilateral hearing aids. Tr. 283, 334, 587-

88. Although other medical records definitively refer to plaintiff's use of a hearing aid in the left

ear only, the ALJ incorrectly stated that the record reflects hearing loss in the left ear only.

The ALJ erred in concluding that plaintiff suffered hearing loss in only her left ear.

However, this error was harmless. An ALJ's error is harmless where it is "inconsequential to the

ultimate nondisability determination." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155,

Page 12 - OPINION & ORDER

1162-63 (9th Cir. 2008); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006).  In each case, the court must "look at the record as a whole to determine whether the error alters the outcome of the case."  *Molina v. Astrue*, ——F.3d ——, 2012 WL 1071637, at *4 (9th Cir. Apr.2, 2012).

Here, the ALJ found plaintiff's left ear hearing loss to be a severe impairment within the meaning of the regulations. Tr. 17.  As discussed above, a more thorough review of the record reveals that plaintiff also suffered from hearing loss in her right ear and the ALJ's severity finding should have reflected this fact.  Nonetheless, having found a severe impairment in plaintiff's left ear hearing loss, the ALJ assessed plaintiff's RFC accordingly, limiting her to light work not in the proximity of factory floor noise levels. Tr. 21.  Even without acknowledging plaintiff's bilateral hearing loss, the ALJ specifically referenced medical records relating to plaintiff's hearing loss and discussed its impact on her ability to communicate.  Tr. 19-20.  For example, the ALJ refers in his decision to an audiogram performed by Dr. Pederson, which indicated "binaural moderate sensorineural loss with actually excellent word recognition of 92%"; when wearing only a left ear hearing aid, "her word recognition is 96% bilaterally." *Id.*  Thus, it is unclear from the record and the ALJ's decision that his severity determination, RFC assessment, and ultimate nondisability finding would have been altered had the ALJ properly considered plaintiff's right ear hearing loss.  As such, it appears that the ALJ's error was inconsequential to the ultimate nondisability determination and, therefore, harmless.

Further, the burden of establishing "that an error is harmful falls on the party attacking an administrative agency's decision." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).  In the context of social security disability determinations, "[w]here harmfulness of the

Page 13 - FINDINGS AND RECOMMENDATION

error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm." *McLeod v. Astrue*, 640 F.3d 881, 887 (9th Cir. 2011) (as amended). Plaintiff states: "The ALJ provided no reason for rejecting the opinions that supported hearing loss in the right ear. Because the ALJ failed to provide the required clear and convincing reasons for rejecting the aforementioned doctors' disability opinions, those opinions should be credited as a matter of law, and the effects of those disabilities should have been considered in the analysis." Pl.'s Op. Br. 26. This statement comprises the entirety of plaintiff's argument regarding the ALJ's failure to account for plaintiff's bilateral hearing loss. Plaintiff neglects to address how the ALJ's error is harmful nor explain how it impacts the ALJ's severity determination, RFC assessment, or ultimate outcome of the case, if at all. Thus, plaintiff failed to establish how the ALJ's failure to address her right ear hearing loss was harmful, and it is not apparent to this Court.

### C. Credibility

#### 1. Plaintiff's Testimony

Plaintiff alleges the ALJ erred by improperly rejecting plaintiff's testimony without clear and convincing reasons for doing so. Pl.'s Op. Br. 27-29. In deciding whether to accept subjective symptom testimony, the ALJ must perform two stages of analysis. 20 C.F.R. § 404.1529. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). At the second stage, assuming there is no affirmative evidence of malingering, the ALJ must provide clear and

convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Id.* at 1284; see also *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

If the "ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). A general assertion that plaintiff is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *see also Morgan v. Comm'r, Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

First, plaintiff alleges the ALJ improperly rejected plaintiff's testimony in "one blanket statement." Pl.'s Op. Br. 27. The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (citation omitted). After asserting that the ALJ did not "set forth specific reasons for disbelieving Plaintiff's testimony regarding her impairments," plaintiff then proceeds to list six specific reasons the ALJ gave in explaining his adverse credibility finding. Plaintiff's argument regarding the ALJ's lack of specificity is belied by her own discussion; therefore, the Court declines to discuss this argument further.

Second, plaintiff argues the ALJ improperly rejected plaintiff's testimony "because he felt that her allegations of symptoms were not corroborated in the medical record . . . and none of his findings of decreased credibility are supported by the record." Pl.'s Op. Br. 27. An ALJ may consider many factors in weighing a claimant's credibility, including ordinary techniques of credibility evaluation, inconsistencies either in the plaintiff's testimony or between the plaintiff's testimony and his or her conduct, unexplained or inadequately explained failure to seek

Page 15 - FINDINGS AND RECOMMENDATION

treatment or follow prescribed treatment, claimant's daily activities, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. *Thomas*, 278 F.3d at 958–59; *Tommasetti*, 533 F.3d at 1038; *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c).

Here, the Court is persuaded that the ALJ provided clear and convincing reasons for finding plaintiff's statements "not entirely credible."[2]    Tr. 23.    The ALJ noted several inconsistencies in plaintiff's testimony regarding her symptoms.    For example, the ALJ observed that in her disability application, plaintiff alleged her vision never fully recovered since undergoing cataract surgery in 2006; however, medical records from 2007 reflect that she has 20/25 vision bilaterally and an ability to read using over-the-counter reading glasses.    Tr. 22; 465.    The ALJ also observed that in plaintiff's disability application, plaintiff alleged suffering from irritable bowel syndrome ("IBS"); however, the ALJ found no medical signs or clinical findings during the relevant period to support a diagnosis of IBS and in fact plaintiff denied "any pelvic pressure or problems with bowel movements" in a 2006 examination with Dr. Park.    Tr. 22; 418.

---

[2]The court recognizes that the ALJ used "disfavored" language in his analysis by explaining that "claimant's statements concerning the intensity, persistence and limiting effects of her alleged impairments and symptoms are not entirely credible to the extent they are inconsistent with the above residual functional capacity assessment." An ALJ must consider a claimant's credibility in the course of assessing a residual functional capacity (20 C.F.R. § 404.1545(a)(3); SSR 96-8p at *7 (available at 1996 WL 374184)) rather than determining credibility based on the extent to which a claimant's testimony comports with the RFC finding. Despite the ALJ's phrasing, however, the record reflects that the ALJ properly considered plaintiff's credibility in the course of determining the RFC.

Page 16 - OPINION & ORDER

The ALJ also found inconsistencies in plaintiff's testimony between her alleged limitations and her conduct; specifically, the ALJ found that plaintiff described daily activities which were not limited to the extent expected given her complaints of disabling symptoms and limitations. Plaintiff and her lay witness, Ms. Groves, testified that plaintiff performed a wide range of activities despite her reported symptoms and limitations, acknowledging that plaintiff "knits, watches TV, reads paper, etc. daily," goes out to a movie weekly, and attends an Eastern Star social group monthly. Tr. 23. The ALJ emphasized Ms. Groves' testimony, "even as late as 2009," reported that plaintiff shops weekly for food and personal items, pays bills, makes change, and handles a checkbook. *Id.* However, the ALJ concluded that such testimony regarding plaintiff's conduct was inconsistent given plaintiff's testimony about the severity of her symptoms and limitations. *Id.* For example, the ALJ noted that while plaintiff alleges suffering from anxiety, claiming she could not resume working because "she would have an anxiety attack," her ability to leave her home and drive to appointments "demonstrates her alleged anxiety symptomology is not as limiting as she claims." Tr. 22.

As for failure to seek or follow prescribed treatment, the ALJ noted that plaintiff acknowledged taking her prescribed anti-depressant medication in an "erratic" manner, emphasizing "she admittedly has not been compliant in taking her mental health medication." Tr. 17, 19. Indeed, the record is replete with references to plaintiff's failure to take her anti-depressant medication on a daily basis, as prescribed by her treating physician. *See, e.g.*, Tr. 278 ("appears she has problems and then doesn't tell anyone and quits taking [meds]"), 417 ("has been erratic in taking her fluoxetine"), 637 ("Client stated she had not taken prescribed Fluoxetine for 5 days prior to intake"), 645 ("sporadic medication use").

Page 17 - FINDINGS AND RECOMMENDATION

However, the ALJ's credibility analysis is not without error. After noting the inconsistencies between plaintiff's reported symptoms of anxiety and her activities of daily living, the ALJ observed that "[f]urther, there is no formal diagnosis of anxiety in the record." Tr. 22. Plaintiff correctly points out that such a diagnosis does exist in the record; in 1995, for example, plaintiff underwent a mental health evaluation at Kaiser Permanente in which she was diagnosed with a generalized anxiety disorder and prescribed an anti-anxiety medication. Tr. 281-84. Similarly, the ALJ observed that plaintiff "reported to Dr. Ellison that she receives treatment for hypertension which is not supported in the medical evidence of record," Tr. 22, but plaintiff correctly refers to multiple notes in the record reflecting that plaintiff was prescribed and reported taking lisinopril, a medication for hypertension. *See, e.g.*, Tr. 358.

Thus, the Court finds that not all reasons given by the ALJ for discrediting plaintiff's testimony were proper. However, even though not every reason relied on by the ALJ to discount a claimant's credibility is upheld on review, the credibility determination must be sustained if the determination is supported by substantial evidence. *Batson*, 359 F.3d at 1197; *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). Where, as here, the ALJ has made specific findings justifying a decision to find plaintiff's allegations not entirely credible and those findings are supported by substantial evidence in the record, the Court's role is not to second-guess that decision. *Thomas*, 278 F.3d at 958–59; *see also Carmickle*, 533 F.3d at 1162.

2. Plaintiff's Lay Witness Testimony

Plaintiff alleges the ALJ erred by improperly rejecting the testimony of plaintiff's lay witness, Patricia Groves. Pl.'s Op. Br. 29-31. Lay witness testimony regarding a claimant's symptoms or how an impairment affects the ability to work "is competent evidence that an ALJ

Page 18 - OPINION & ORDER

must take into account," unless the ALJ "expressly determined to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). The reasons "germane to each witness" must be specific. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006); see also 20 C.F.R. §§ 404.1413(d)(4), (e).

Here, the ALJ discussed Ms. Groves' testimony at length, quoting directly from her hearing and written testimony and citing to specific exhibits in the record, before deciding to give "some but not controlling weight" to her testimony. Tr. 23-24. The ALJ then observed that Ms. Groves' reports are "significantly consistent with the claimant's alleged symptoms and limitations, which, as noted above, are not entirely credible." Tr. 24. Plaintiff contends that a lay witness' independent observations "cannot be rendered not credible because they are consistent with another account that has been found not entirely credible." Pl.'s Op. Br. 30. However, the Ninth Circuit has held that where an ALJ provides clear and convincing reasons for rejecting a claimant's own subjective complaints, and the lay witness testimony is similar to such complaints, it follows that the ALJ also has germane reasons for rejecting the lay witness testimony. *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (lay testimony can be discounted for the same reasons as a claimant's subjective reports). As discussed above, the ALJ gave clear and convincing reasons for finding plaintiff's testimony not entirely credible, such as inconsistencies in plaintiff's statements and inconsistencies between her alleged limitations and her conduct. As the ALJ observed, Ms. Groves' testimony was substantially similar to the testimony given by plaintiff and the ALJ was justified in discounting her testimony for the same reasons that he discounted plaintiff's subjective reports. *See Valentine*, 547 F.3d at 694.

Page 19 - FINDINGS AND RECOMMENDATION

Plaintiff also maintains that the ALJ improperly rejected Ms. Groves' testimony for being "too succinct and general to have more than little evidentiary value." Pl. Op. Br. 30.  According to the ALJ, Ms. Groves' testimony portrayed an individual who experiences some difficulty in day-to-day activities, such as housework and laundry, who takes "quite a while" to organize herself for any activity, and who only attends to personal needs and grooming, if at all, when she goes out of the house.  Tr. 23.  At the same time, the ALJ observed, plaintiff is able to sufficiently organize herself such that she can pursue daily hobbies wherein she "knits, watches TV, reads paper, etc." as well as joins Ms. Groves in activities where they "eat out, shop, [go to] movies, talk." Tr. 23.  Ms. Groves noticed plaintiff's difficulty understanding and following directions, but also opined that plaintiff could return to directions and study them.  Tr. 24.

Thus, the ALJ described Ms. Groves' testimony as containing somewhat conflicting statements about plaintiff's actual limitations as applied to her social interactions and home life. Tr. 24.  Although the ALJ gave Ms. Groves' testimony some weight, he declined to give it controlling weight because it was not especially helpful in identifying "specific limitations from medically determinable impairments" as applied to plaintiff's capacity for basic work activities. *Id*.  The ALJ concluded that Ms. Groves' testimony did not "reflect limitations which would preclude work under the established residual functional capacity." *Id*.  Accordingly, the ALJ disregarded, to an extent, Ms. Groves' testimony because it was inconsistent with plaintiff's subjective complaints regarding the extent of her impairments.  This is a specific and germane reason to give some but not controlling weight to Ms. Groves' testimony.  Therefore, the ALJ did not err in his credibility determination of plaintiff's lay witness, Ms. Groves.

//

Page 20 - OPINION & ORDER

D. Failure to Fully and Fairly Developing the Record

Plaintiff alleges the ALJ erred by failing to fully and fairly develop the record; specifically, plaintiff argues the ALJ erred by declining to ask more specific questions of plaintiff's lay witness and by refraining from scheduling a neuropsychological consultative examination for plaintiff. Pl.'s Op. Br. 31-33.

1. Declining to Ask More Specific Questions of Plaintiff's Lay Witness

Plaintiff argues that the ALJ improperly dismissed the testimony of plaintiff's lay witness, Ms. Groves, because he found her testimony to be "succinctly done in general terms without direct time and functioning correlation to when she is able to go out, shop, attend a movie or group, do housework or communicate." Tr. 24. If Ms. Groves' testimony was too general, plaintiff argues, the ALJ should have asked Ms. Groves more specific, additional questions at the hearing and, declining to do so, the ALJ thus failed in his duty to fully and fairly develop the record. Pl.'s Op. Br. 31-32.

An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when "the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); *Tonapetyan*, 242 F.3d at 1150. Plaintiff cites to no authority, and this Court is not aware of any, that requires an ALJ to elicit additional information from a lay witness in order to fully and fairly develop the record. Rather, the regulations permit an ALJ to question witnesses but do not require him to do so. *See* 20 C.F.R. §§ 416.1450(e) ("The administrative law judge *may* ask the witnesses any questions material to the issues and shall allow the parties or their designated representatives to do so." (emphasis added)).

Page 21 - FINDINGS AND RECOMMENDATION

At plaintiff's hearing, both the ALJ and plaintiff's attorney questioned Ms. Groves; in addition, Ms. Groves submitted two third-party function reports detailing her observations of plaintiff's activities and limitations. Tr. 70-74; 247-54. In his decision, the ALJ discusses Ms. Groves' testimony at length, quoting directly from her hearing testimony and the third-party function reports she submitted. Tr. 23-24. In her opening brief, plaintiff states that, in an attempt to "remedy" the generalized nature of Ms. Groves's testimony in the record, she submitted additional testimony from Ms. Groves in the form of an affidavit to the Appeals Council after the ALJ rendered his decision. Pl.'s Op. Br. 32. Plaintiff then proceeds to list the "additional information" contained in Ms. Groves' affidavit. *Id.* The "additional information," however, is almost exactly the same information in the record before the ALJ in the form of Ms. Groves' hearing testimony and third-party function reports. Tr. 650-52; *cf.* Tr. 70-74; 247-54. Thus, the "additional information" provided to remedy any alleged ambiguity or inadequacy is essentially cumulative. *Id.* Plaintiff has not demonstrated that the evidence in the record regarding Ms. Groves' testimony was ambiguous or inadequate so as to trigger the ALJ's duty to further develop the record. As such, the ALJ did not err in declining to ask more specific questions of plaintiff's lay witness.

### 2. Declining to Schedule a Neurophsychological Consultive Exam for Plaintiff

At step two, the ALJ found plaintiff's depressive/bipolar disorder to be a severe impairment within the meaning of the regulations; nonetheless, the ALJ found that plaintiff had the RFC to perform light work, with some limitations specific to her impairments. Tr. 17, 21. Following plaintiff's hearing, the ALJ agreed to leave the record open for plaintiff to submit supplemental evidence. Tr. 83-84. Along with additional session notes from Dr. Aadland

Page 22 - OPINION & ORDER

(which, according to plaintiff's counsel, "unfortunately, did not go unto the depth we had expected"), plaintiff's counsel also requested the ALJ "consider the possibility of arranging another consultative examination - specifically dealing with her mental impairments" should the ALJ determine that the medical record is "not complete enough to allow you to issue a favorable decision." Tr. 634. Plaintiff now argues that the ALJ failed his statutory duty to fully and fairly develop the record by declining to schedule a neuropsychological consultive exam for plaintiff regarding her bipolar disorder. Pl.'s Op. Br. 31-33.

As explained above, an ALJ's duty to further develop the record is triggered when there is ambiguous evidence or when "the record is inadequate to allow for proper evaluation of the evidence." *Mayes*, 276 F.3d at 459-60; *Tonapetyan*, 242 F.3d at 1150. This duty may require the ALJ to obtain additional information, for example, by contacting treating physicians, scheduling consultative examinations, or calling a medical expert. 20 C.F.R. §§ 416.912(e)-(f), 416.919a.

Here, the ALJ did not err in failing to further develop the record. The administrative record before the ALJ was neither ambiguous nor inadequate to allow for proper evaluation of the evidence and to make appropriate findings regarding plaintiff's RFC. The ALJ discussed in detail plaintiff's medical records, including many early records outside the relevant period of review. Tr. 17. The ALJ also specifically discussed evidence of plaintiff's mental impairment, including the session notes of her psychologist and the medications prescribed for plaintiff's depression by her treating physician. Tr. 17-22. Based on the existing medical records and opinions, the ALJ concluded that the record contained sufficient information to render an informed decision as to plaintiff's impairments; indeed, the ALJ determined plaintiff's depressive/bipolar disorder to be a severe impairment and plaintiff does not dispute this finding.

Page 23 - FINDINGS AND RECOMMENDATION

Tr. 17.  Plaintiff does not maintain that the ALJ lacked sufficient evidence to make a severity finding regarding plaintiff's mental impairment, yet she argues that, after finding plaintiff's depressive/bipolar disorder severe, the ALJ should nonetheless have ordered a supplementary consultative exam.  Pl.'s Op. Br. 31-33.  However, plaintiff has failed to demonstrate that the evidence in the record was so ambiguous or inadequate as to require the ALJ to order an additional consultative examination.  *Mayes*, 276 F.3d at 459-60.

Moreover, it was plaintiff's duty to prove she was disabled.  *See* 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require"); *accord Clem v. Sullivan*, 894 F.2d 328, 330 (9th Cir.1990) ("Clem has the burden of showing that he is disabled").  The Code of Federal Regulations clearly places the burden of providing evidence of disability upon the claimant, explaining: "You must provide medical evidence showing that you have impairment(s) and how severe it is during the time you say you are disabled."  20 C.F.R. § 404.1412(c) (2000); *see also* 20 C.F.R. § 404.1512(a) ("[Y]ou have to prove to us that you are blind or disabled . . . This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairments(s) and . . . its effect on your ability to work on a sustained basis").

If plaintiff believed that the medical records she submitted did not adequately address her mental impairment, she could have obtained a neuropsychological consultive exam herself and submitted those records to the ALJ, who agreed to leave the record open following the hearing precisely for the purpose of allowing plaintiff to submit additional records. Tr. 83-84.  Plaintiff's psychologist, Dr. Aadland, specifically declined to give her opinion regarding how plaintiff's

Page 24 - OPINION & ORDER

symptoms impacted her activities of daily living, social functioning, and concentration. Tr. 632. The letter from plaintiff's counsel to the ALJ following plaintiff's hearing indicates that plaintiff was aware that the evidence she submitted regarding her mental impairment may not provide a strong case for a finding of disability. Tr. 634. However, plaintiff chose not to obtain her own neuropsychological consultive exam or otherwise supplement her medical records with additional evidence of her mental impairment, beyond providing two more session notes from Dr. Aadland. Plaintiff held the burden of providing evidence of her bipolar disorder and cannot now shift that burden to the ALJ because she chose not to submit additional evidence of her mental impairment. Thus, the ALJ did not err in failing to fully and fairly develop the record by declining to schedule a neuropsychological consultive exam for plaintiff.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 27 day of April, 2012.

Mark D. Clarke
United States Magistrate Judge